May it please the Court, Alexis Zuhairi on behalf of the United States, I have reserved three minutes for rebuttal. The District Court suppressed evidence from both the initial warrantless search of McCormick Place and the warranted search that followed. This appeal does not challenge the suppression of evidence obtained from the initial entry. Instead, it asks whether the warrant contained probable cause apart from that information. And the answer to that question the government submits is yes. Repeat the facts again and remind us kind of what happened here. Yes, Your Honor. Well, officers beginning in October of 2013 began investigating a heroin distribution ring in the Cincinnati area. And during the course of their surveillance, they observed Williams, Gulley, and their associates engaging in a pattern of behavior that was indicative of drug trafficking. They were frequenting suspected stash houses on an almost daily basis. They were, they had no legitimate employment in drug felony histories. There were all sorts of indicia that these individuals were engaging in drug trafficking. And then we get to April of 2014. And at that point, officers observed this pattern of behavior indicative of drug trafficking happening at McCormick Place. That's the one they went into that's in contest. That's exactly right, Your Honor. They found a key or they got a key and they went in. But what did they already know when they went in about drug trafficking from that house? Sure. Well, they knew quite a bit. I mean, first, there was an eight-month investigation that preceded all of this such that officers had seen these associates engaging in a manner of behavior consistent with drug trafficking. But then you have Going to the property for short periods of time, not staying overnight, things of that nature. That's exactly right. And the things that they actually put into the warrant were things that they primarily observed once they went into the property initially and sort of maintained, did a broad sweep and then secured it while the warrant was being prepared. Is that right? I disagree with that, Your Honor. I think that Well, there was a question. Well, the warrant, the warrant affidavit is approximately four pages. And the information from the insertion of the key and the protective sweep takes up, you know, approximately three paragraphs, a little bit less than that. So there's a whole lot of this affidavit that preceded the officer's entry. The other thing, it includes the trash pulls and all of that, too. Well, so there were trash pulls that happened at the Retreat Street and Elbrin residences. But however, I would point the Court to a couple of other really strong indicia of probable cause. First, there was a Pontiac Montana, and that vehicle first led authorities to this house. You claim that they, at the time they went in with the key, that they didn't have to have a warrant. We're not appealing the suppression of evidence related to that initial entry, Your Honor. You agree that they needed a warrant? We're not appealing the Court's decision as to that. We're saying the Court can strike all of that information from the warrant. Let's assume for the moment that they needed a warrant in order to go in at that time. Now, you're, from that point forward, they went in, they found that they had a drug house. There were things there. And while that was going on, they were getting a warrant. I would say, Your Honor, that they were getting the warrant before the officers ever entered the house. They did not need any information from this house in order to get the warrant. As I was saying before, we... But they wanted to introduce in evidence information they got before they got the warrant and after they used the key to go in the house. It's true, Judge Merritt, that they did phone in additional information that they saw during the initial entry. But we're asking this Court to strike all of that information, to assume that it's suppressed, and then to evaluate the remainder of the affidavit and to look to see if probable cause remains. What is it you want to introduce? You don't want to introduce that information that came when they got into the house. What exactly is being suppressed that you think is incorrect? There were several handguns found in the residence. In addition, there was drug paraphernalia, specifically a drug press. That's when they went in without a warrant, right? Well, Your Honor, they did a protective sweep in the house, and it's not clear exactly what they did or didn't... If they didn't have... If they didn't have a warrant to get into the house, they can't do a protective sweep. There's no Fourth Amendment protective sweep law if you go into the house with that illegally. That's correct, Your Honor. But the law says that in a situation like this, when you do have perhaps, perhaps not, but we're assuming an illegal entry, that you can strike all of that information. It's the independent source doctrine. So the police should not be put in a worse position than they would have if they hadn't engaged in this initial entry. And so what we're asking this Court to do is to strike, to ignore everything that was found upon the initial entry. I'm really kind of confused by your statement right now. They should not be put in a worse position than they would have been had they not engaged in the illegal entry. They should be put in the same position that they would have been in had they not engaged in the illegal activity. So in other words, they don't gain to benefit anything from this illegal entry, assuming that it was so. So the government doesn't get to rely on any of that information, none of it. We strike it all from the affidavit, and we look at all the information that the police had before they ever entered this home. And in fact, the warrant was being sought before the officers ever entered the home. And we just assume that had they waited on the warrant, they would have found whatever they found once, at the time they entered illegally. Well, the warrant was being sought right after the searches of the other two residences, the Elbrin home and the Retreat Street home. So those searches took place in the early morning hours of June 11th, and then the officers began preparing this search warrant for McCormick Place because now they had additional evidence connecting drug trafficking to McCormick Place. Not the evidence that they found in the house. What you're saying is they had probable cause before they ever went in the house. That's exactly right, Your Honor. That they cannot, because they went into the house illegally, they cannot be harmed, the officers that is, by omitting the probable cause evidence they already had as a result of the cars being parked out and the activities that they had surveilled. That's exactly right. They had probable cause. That's your argument. That's exactly right, Your Honor. They were getting the right to go in based upon surveilled activity that was legal. Not just surveilled activity. I'd point the court, as I was saying before, to two other indicia of probable cause. We have a Pontiac Montana. We have this vehicle that's associated with these individuals, Williams and Gulley, their associates are seen driving it. It's also seen at the residence. In fact, it's this vehicle that first leads authorities to McCormick Place to begin with. And this vehicle is stopped by authorities on May 9th after making a 24-hour or less trip to Chicago and back. And there's evidence of large-scale drug trafficking inside. I want to go back and ask you this, because it seems to me that this whole Fourth Amendment jurisprudence is designed to prevent and discourage and deter, you know, illegal entries, illegal searches. And what we're saying here is, yes, the use of the key in the entry was violative of the Fourth Amendment. So you say, well, we don't want to put them in a worse position, but isn't that exactly what the law says, that we want to deter these illegal entries? So if you enter illegally, rather than waiting until your warrant comes, then everything is excluded, which is what the judge basically said. Well, Your Honor, I think that the law says differently. I think that the law says that evidence that would have been inevitably discovered that had an independent source for discovery, it shouldn't be suppressed. And I'd also add that there's, you know, the record is a little bit murky about why the officers entered when they did. But certainly, you know, the officers didn't think that they were doing anything wrong. They, in fact, phoned in the information. Federal or state? They were Cincinnati police officers, Your Honor. They weren't that familiar with the Fourth Amendment, probably. Well, I wouldn't say that. I'd also, I'd call the Court's attention to one other really important factor, and that is the searches of the residences that took place on the morning of June 11th. So you have Williams and Goley, and these are their homes. And authorities search their homes, and they find, they suspected that these men were engaging in large-scale drug trafficking. And these searches confirmed it. They found handguns. They found large amounts of money. That's what you want to put in evidence, and that's what they found when they first went in with the key. Well, Your Honor, let me clarify. No, that's, so the warrant states that there were three searches that, well, there were three searches that happened. In the warrant, it outlines the searches of two. Two of these defendants' residences were searched in the morning, and there they found evidence of large-scale drug trafficking. This was before they ever went to the suspected stash house. And so it actually provides additional indicia of probable cause. Where did they find that, that morning? The very morning, hours before they searched the stash. They waited until they had this additional evidence from these defendants' residences that was connected to McCormick Place. So at other residences, they found guns and drugs and so on. That's right. And those... And you could infer from that that since they were frequently in this McCormick Place, that they had the same thing. That's your inference. That's right. And because, I'd add, the affidavit states that these individuals were using, they weren't just seen at McCormick Place, they were seen using keys and going on an almost daily basis and visiting for a short period of time. So now you have these two individuals who were observed engaging in drug... They had information that gave them probable cause to search these houses, this McCormick Place house, if they had a warrant. And so what happens is they already got, by inference, probable cause to search and get a warrant. They go start getting a warrant. In the meantime, they learn basically the same thing by going in without a warrant. So you've got a warrant being issued and a search taking place pursuant to a warrant a little later. So the information comes from two places, one legal, one illegal. The illegal one being when they put the key in the lock and didn't have a warrant. The legal one being the inference from the other houses. So you've got that situation and the question is, is the court going to say that this information is, that what they obtained is illegal because of the illegality of the inference with the key or legal because of the previous information they had about the other houses. That's the problem in the case. Is that right? You may respond briefly. Thank you, Judge Donald. Yes, Your Honor, and I don't know if I would call it a problem. I would direct the court to the Murray case in the United States Supreme Court as well as in United States v. Jenkins. And we're conceding that this information should be stricken and we're asking the court to do what the district court didn't do and that's to look at all the other evidence in the affidavit and there's quite a bit. Thank you. Thank you. Counsel? Good morning, Your Honors. May it please the court, so magit data on behalf of Defendant Pelley Michael Williams. I currently represent him at trial level and obviously I represent him here before Your Honors. Judge Murray, I'd like to start with answering the question that you posed to the government. Yes, they needed a warrant to search the property at McCormick. The government asks you today to say, you know, ignore the entry, just look at the information, excise the illegal search. They ask you to do that because they have to ask you to do that because... They're going to get it in evidence, but the question is, it looks like to me, and you can answer this, but they've got information that comes from an illegal source, that is the search with the key. Correct. At the same time, they have independently evidence from which you could infer the same basic things that they found illegally when they went in and they're getting a search warrant to go in with that legally obtained evidence. Yes, sir. And then they go in and they get the drugs and the guns or whatever it is that they seize. So you've got information that's legally obtained that gives them probable cause to get a warrant and you've got information that's illegally obtained as well. So then the question is, well, what do you do with that? That's the question, isn't it? That is the question and that is the argument that the government is making. Judge Merritt, I would answer that with two points. One, there was not enough information left. If you excise the information, there was not enough information left for probable cause for a warrant to get the search of McCormick. The government bases the information in the affidavit for McCormick on conclusory statements in a manner similar to a stash house, indicia of a stash house. What the government did not point to was any source of drugs, any observation of drugs at a place, leaving a place, any sales, anything of that nature. They say that that is not the case. They say that they had that house McCormick under surveillance for a pretty good time and they find that drugs are, at least by strong inference, are being sold in and out of that house for some time where they've had it under surveillance. Then they say, we also know that at the house of these people, other houses of these people, there is guns and drugs and so on. They say, since it's the same people, another house, we infer that the other house is like the house we know about. And just to clarify for the record, Judge, what the police said was we saw this gentleman coming in and out of the house several times. They did not specify any particular activity in terms of actual drug trafficking. There is no allegation and they've never made any comment about drug trafficking specifically coming out of that house, no recovery of drugs or sales. Your point is their independent probable cause inferences are not credible. That is correct, Your Honor. I would say that to the logical extension, anywhere that either Michael Williams would go on multiple occasions or, for that matter, that Pontiac Montana that was referenced earlier, it becomes like the boogeyman. Anywhere that person goes is now marked and subject to search by probable cause for a warrant. That can't be the state of the law. And my second point, Judge, is that Judge Barrett made that analysis. The government's trying to tell you that Judge Barrett did not go through that fact pattern and make that analysis for himself. He absolutely did. He laid out a lengthy discussion of the facts and then discussed that assuming you excise this illegal information obtained, there is not probable cause for this warrant. That's why they appealed. Of course, Your Honor. And as this court's aware, the district court was in the best position to make that determination. Obviously, this court gets to make a ruling of law de novo. But again, he was there. He saw the facts. He made his decision. Your Honor, going beyond that, any cases? I wish the Supreme Court said the same thing about this court. That you say about the district judge here. Well, consider it my opinion, Judge. Just to draw a fine line underneath what I've already alluded to, the government in its briefs, its chief brief and its reply brief, has cited the cases where they want to convince Your Honors that this is like this case and in that case the Sixth Circuit either affirmed a denial or overturned a granting of suppression. In all of those cases, you will note, there is a straight line, a straight line from the location, the property that the search warrant is being sought for, and drugs. Whether it's a vehicle left, it was stopped for a traffic violation, nine kilograms of cocaine were found, or a direct sale was made out of that property, there has always been a line. In fact, this court has said that when somebody comes out of their house, is being arrested for an assault warrant, has eight grams of cocaine on themselves, that is not going to be enough. Well, the government says that a lot of drugs were being sold out of the McCormick house and that they had had it under surveillance. There were cars coming and, you know, she can maybe, or you can give us, if you will, the detail about how many times they saw the cars there and so on. But that's what she says, I think. Just to circle back around, Judge, that's not what's been said. The government has said that there's evidence of drug trafficking, and reviewing the record and reviewing the opinion, you will see that there is no, no one has ever, for surveillance or otherwise, no one has ever said, sales of drugs have come out of McCormick. So was the evidence that she referenced, the going in and out of the property for short periods of time, the property being in the name of a known drug dealer who had no other discernible income, what are the other pieces of evidence on which the government bases characterization of evidence of drug trafficking going on from that residence? Well, I think that speaks to the larger issue of this case in general, Your Honor. Is there any other evidence that they have heard? I would say, one, the property was not, in fact, in the name of my client, Mr. Williams. Two, there is no other evidence in support of probable cause for McCormick. So the only evidence on which the government relies is these two people who they've identified as being, you know, drug dealers, going in and out of the property for short periods of time. Is that it? If the court considers the other properties that the government has spoken of, but specifically to McCormick and the issue that we're here for today, that is it, that these are suspected drug dealers. They're going in and out of this property. Therefore, that must be a stash house. That would be our argument. Nothing more, and you tell us that when we ask you the specific question as an officer of the court. Nothing more. Your Honor, in and out of the stash houses, they had duffel bags. That's it. Okay. Beyond that, there have been, again, no sales, no recovered drugs, no recovered money, nothing otherwise that would point to, it is guilt by association. If you call a property guilty, it's guilt by association. Anywhere that Michael Williams is going to go on multiple trips is now subject to investigation by the police. That's what the government's asking you to do. A bit of evidence is not sufficient to be probable cause for a warrant. That is correct, and Judge Barrett also, after full analysis of the facts, felt the same way. I just, for a moment. That's the case. If you have a rebuttal, she can tell us that there are some other facts that you haven't mentioned, but we'll see what she's got to say. Again, Your Honor, I don't want to make the government's argument for them, but I think it's the causal link between we got search warrants, we went out and got probable cause for these other properties, we found what we found, therefore, and let's keep in mind, the warrants that they got were based on stronger evidence. Trash pulls. Trash pulls where admittedly heroin was found. More evidence of... What you're basically saying is that they got a warrant and they looked at the other houses and the other houses were being used for drug trade and they were also independently going in and out of the McCormick house and that is all there is to it with their devil bag and that they had no other basis other than the inference from the house that they had been in that they owned. Exactly, Your Honor. It's an inference. It is not strong enough to warrant to meet the threshold of probable cause. They did show, did they not, that one of the people going in and out of the McCormick place, Baldwin, after he went out, albeit 10 days later, had drugs. Your Honor... And they had already, sort of by implication, found he to be one of the associates. Your Honor, and if I'm misquoting the facts, I apologize, but I don't believe I am in saying that... So there are a number of co-defendants, in addition to Mr. Williams and Baldwin being one of them, under no circumstance at this juncture has there been any recovery of drugs that would warrant... There's been paraphernalia, there's been smoke, but I don't believe there's been any fire with regards to a sizable quantity of drugs confiscated. Your Honor, we will acknowledge that even at retreat, one of the properties earlier, a small quantity of heroin was found. I don't want to suggest that absolutely no drugs were found anywhere on this day. What I am saying is that none of that has to do with McCormick, that there haven't been any drugs, anything like that. The question was about drugs on this gentleman, I think, 10 days, either before or later. Wasn't that your question? Yeah, it's another inference that goes... So, just so I understand, Your Honor's asking... ...strong one or what have you, but it's a little more evidence than... It's a little more... ...that he's asking you about, and you can agree or disagree with it and then argue how you think it ought to be construed or how it factors in or doesn't. Fair enough, Your Honor. Your Honor, I can't deny that Baldwin was seen at this residence sometime before and was later picked up with what I believe to be a small quantity of drugs. Again, it goes to my further point of a straight line between the property and actual drugs. My belief is that Baldwin was not apprehended directly from that property. That's correct. And I think I hear what you're trying to make certain that we focus in on. You're cautioning us against making the leap that any time a person with a drug trafficking history, visits, inhabits a place or whatever, that is not probable cause that that person is engaged in drug dealing or that that property could be searched as a basis of it being a stash house or a place where drugs are likely kept. You don't want us to make that leap. That's correct, Your Honor, and Your Honor, you actually alluded to what will amount to be my final point as my time is rapidly coming to a close. The Fourth Amendment is a shield. It is not a sword. It is meant to protect whether you like the person, whether you feel the person's a criminal or not. It is meant to protect all of us and limit the reach of the police. Just a change. Of course, Your Honor. Did McCormick have an expectation of privacy for that property? McCormick absolutely had an expectation of privacy, Your Honor. How? He denied being an owner. He denied being an owner, but as evidence came out, he did, for lack of a better term, manage the property. His uncle stayed at that residence. His uncle was the one who was actually there when the police came in, and his uncle acknowledged getting permission from my client to stay at that property. He didn't manage it as a landlord. He managed it as, I mean, Your Honor, there's nothing official on paper saying, indicating that he was a landlord, but the uncle sought his permission, I suppose, to stay at that property. I think he maintained control over it. I see my time is up. If there's nothing further, I thank you for your time. Thank you. I'd like to start by just noting that the district court didn't perform any kind of analysis like we're performing here this morning. The district court didn't discuss any of the other evidence in the affidavit, and I'd like to touch on what Judge Sreinrich said. It is true that D'Angelo Baldwin was an occupant of the Pontiac Montana when it was stopped by authorities in May, and they recovered evidence, not small quantities of drugs, but evidence of large-scale drug trafficking. They found a drug-cutting agent, and they found a digital scale. How does that connect with this house? Well, that vehicle was seen visiting the McCormick Place residence, and, in fact, it's what led authorities there in the first place. But here you don't just have this car that is connected with McCormick Place. You also have these residences that are found with large-scale drug trafficking. I mean, there may have been small amounts of heroin, but there was a kilo press in one of these homes. And not only that, but you have surveillance showing the occupants of these. Another home. That's right. You have surveillance showing the occupants of those two residences using McCormick in a manner consistent with this stash house and using a key, using a key to enter. Anywhere that that car went, did that establish probable cause for the police to go and search or suspect of drug activity? Absolutely not, Your Honor. We have much more than just a car traveling to a place. In this instance, we have surveillance over a large period of time showing how this organization would utilize stash houses, and this was consistent with the prior uses of stash houses. They were going to a residence that appeared unoccupied. They were going on an almost daily basis. They were using keys to enter and then leaving a short time later. That's not going and visiting a friend for a couple hours. That's not going to a place of business. It's distinct. And I'd also like to make a point, there's no requirement that you need a direct link between you need to show evidence that drugs were trafficked out of a home in order to establish probable cause. And in fact, I note that this court has held that it can be inferred that a known drug dealer's home contains evidence of drug trafficking. And so I'd suggest to the court that that inference should be even stronger here, where we have known drug traffickers, we've recovered evidence of drug trafficking from their residences. You've got them coming and going to the McCormick house, and you've got what the officers knew about what they had in their own houses. But I don't get quite the Pontiac inference from the Pontiac. The Pontiac was seen outside the McCormick house. That's right, on multiple occasions. Multiple occasions. In addition, Williams and Gulley, the occupants of the two homes that were searched, were also seen driving the vehicle. It was a vehicle used by any number of the members of the organization. And why did the police believe that the Pontiac was being used as a drug-carrying car? Well, I could just point the court to the affidavit, which says that they did obtain a warrant to place a tracking device on this vehicle in conjunction with the investigation. Prior to that. That's correct, Your Honor. And an extension was sought on April 26th, I believe. They had probable cause to believe that the car... That's right. So they did obtain a warrant to put this tracking device on the vehicle. I see my time has expired. The government asks the court to reverse the suppression decision. Thank you. All right. The matter is submitted. We thank each of you for your advocacy. I believe there are no further oral argument cases. Thank you. You may adjourn court.